**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF TEXAS**
**HOUSTON DIVISION**

| | |
|---|---|
| In re:<br><br>BRAZOS ELECTRIC POWER<br>COOPERATIVE, INC.,<br><br>        Debtor. | Appeal from Bankruptcy Case No. 21-<br>30725 (DRJ) (Bankr. S.D. Tex.)<br><br>Adv. Proc. No. 21-03863 (DRJ) |
| ELECTRIC RELIABILITY COUNCIL OF<br>TEXAS, INC., *et al.*,<br><br>        APPELLANTS,<br><br>v.<br><br>BRAZOS ELECTRIC POWER<br>COOPERATIVE, INC., *et al.*,<br><br>        APPELLEES. | CIVIL ACTION No. 4:21-cv-03692 |

**DEBTOR'S RESPONSE IN OPPOSITION TO ELECTRIC**
**RELIABILITY COUNCIL OF TEXAS, INC., ET AL.'S  MOTION FOR**
**LEAVE TO APPEAL THE ORDER GRANTING IN PART AND DENYING**
**IN PART DEFENDANT'S MOTION TO DISMISS AND FOR ABSTENTION**
**[Relates to Adv. Dkt. No. 209]**

        Brazos Electric Power Cooperative, Inc. ("Brazos" or the "Debtor") files this Response in

Opposition to Electric Reliability Council of Texas, Inc.'s ("ERCOT") and aligned Intervenors' [1]

*Motion for Leave to Appeal the Order Granting in Part and Denying in Part Defendant's Motion*

*to Dismiss and for Abstention* [Adv. Dkt. No. 209] (the "Motion").

---

[1] The Intervenors joining in ERCOT's Motion include Calpine Corporation, NRG Energy, Inc., NextEra Energy Marketing, LLC, Talen Energy Supply, LLC,  and ENGIE Energy Marketing NA, Inc.  Certain other Defendant-Intervenors in the case, Tenaska Power Services Co., Golden Spread Electric Cooperative, Inc., and South Texas Electric Cooperative, Inc. did not join the Motion.

## I.    INTRODUCTION

ERCOT and its aligned Intervenors (together, the "Movants") seek leave under 28 U.S.C. § 158(a)(3) to immediately appeal an interlocutory Bankruptcy Court order denying Movants' motion to dismiss or abstain.  In effect, ERCOT asked the Bankruptcy Court to find that it lacks jurisdiction over Brazos's adversary counts that challenged the very bankruptcy claim that ERCOT itself had voluntarily filed.

As the Movants note, *see* Adv. Dkt. No. 209, at 9 ("Motion"), in deciding such motions, courts in this Circuit employ the standards of 28 U.S.C. § 1292(b), which governs leave to appeal other interlocutory orders.  *In re Ichinose*, 946 F.2d 1169, 1177 (5th Cir. 1991); *In re MCorp Fin., Inc.*, 139 B.R. 820, 823 (S.D. Tex. 1992) (Hughes, J.).  But "[t]he Fifth Circuit instructs that such interlocutory appeals should only be granted in 'exceptional' circumstances,"[2] and "are 'generally disfavored.'"[3]  Moreover, "the Fifth Circuit 'adhere[s] to a strict interpretation of § 1292(b)' and commands that the conditions in § 1292(b) 'are to be strictly construed and applied.'"[4]

The Movants have not come close to establishing "exceptional circumstances" under the required strict construction of Section 1292(b).  To warrant appeal of an interlocutory order, the Movants must demonstrate that the order involves "a controlling question of law" as to which "there is substantial ground for difference of opinion" and "that an immediate appeal from the order may materially advance the ultimate termination of the litigation."  28 U.S.C. § 1292(b). The Movants have not demonstrated, nor can they demonstrate, that **any** of those factors are

---

[2] *Abecassis v. Wyatt*, No. H-09-3884, 2014 WL 5483724, at *2 (S.D. Tex. Oct. 29, 2014) (quoting *Clark–Dietz & Assocs.–Eng'rs, Inc. v. Basic Constr. Co.*, 702 F.2d 67, 69 (5th Cir.1983)).

[3] *Texas v. Ysleta del Sur Pueblo*, 370 F. Supp. 3d 705, 708 (W.D. Tex. 2018) (quoting *Mae v. Hurst*, 613 F. App'x 314, 318 (5th Cir. 2015); *United States v. Garner*, 749 F.2d 281, 286 (5th Cir. 1985)).

[4] *Ysleta del Sur Pueblo*, 370 F. Supp. 3d at 708 (quoting *Ala. Labor Council, AFL-CIO v. State of Ala.*, 453 F.2d 922, 924 (5th Cir. 1972)).

present here, much less all of them as the law requires.  To the contrary, the Movants seek leave to appeal a bankruptcy order that merely declined, under discretionary, multi-factor balancing tests, (1) ERCOT's request that the Bankruptcy Court place litigation of some of the nine counts in the Complaint on an indefinite hold by abstaining in favor of state court litigation to which Brazos and ERCOT are not even parties and that will have no effect on the bankruptcy-specific issues in this case; and (2) to find that a regulatory agency (the Public Utility Commission of Texas (the "PUCT")) is purportedly "indispensable" to this litigation where the Complaint does not seek to invalidate any PUCT order or obtain any relief from or against the PUCT.

These issues fail every one of the governing standards for a permissive appeal of an interlocutory order.  They do not involve "questions of law" in the relevant sense of Section 1292(b), but instead only the Bankruptcy Court's discretionary determination, on the specific facts of this case, to retain jurisdiction over an adversary proceeding asserting a debtor's objections to a Proof of Claim and involving interpretation of a contract and bankruptcy law—issues that are all within the province of the Bankruptcy Court to decide.  That decision to retain jurisdiction is in no way "controlling" on any substantive issue in the case, and if reversed merely would a handlful of of counts in a nine-count complaint in limbo pending the outcome of state court litigation over regulatory issues that are not before the Bankruptcy Court and do not bear on the contract interpretation, fraudulent obligation, or bankruptcy law issues that are before the Bankruptcy Court.  Moreover, no precedents establish a substantial ground for difference of opinion on these one-off, case-specific issues; and an immediate appeal, far from "materially advancing" this litigation's ultimate termination in the highly unlikely event it succeeded, would do nothing but unnecessarily prolong it.  The motion for leave to appeal should therefore be denied.

## II.   BACKGROUND

### A.   Factual Background.

#### 1.   The Parties

Brazos is Texas's largest and oldest generation and transmission electric cooperative.  *See* Adv. Dkt. No. 1, ¶ 5 ("Complaint").[5]   Brazos is the wholesale power supplier for its sixteen member distribution cooperatives whose service territory extends from the Texas Panhandle to Houston and who supply electricity to roughly 1.5 million Texans.  *Id*. ¶ 11.

The Official Committee of Unsecured Creditors (the "Committee") was appointed by the Office of the United States Trustee.  *Id*. ¶ 40.  The Committee was reconstituted on March 24, 2021.  *Id*.  The Bankruptcy Court authorized the Committee's intervention into the adversary proceeding as an intervenor-plaintiff on September 2, 2021.  *See* Adv. Dkt. No. 20.  Twelve of the Debtor's sixteen member cooperatives also sought to intervene in the adversary proceeding as intervenor-plaintiffs (the "Intervening Co-Op Members").[6]  The Bankruptcy Court authorized the Intervening Co-Op Members' intervention on October 22, 2021.  *See* Adv. Dkt. No. 136.

ERCOT is the Independent System Operator that operates the Texas Interconnection, which covers most of Texas.  Complaint, ¶¶ 6, 16.  It is a membership-based nonprofit corporation.  *Id*. ¶ 18.  ERCOT schedules power for more than 26 million customers.  *Id*. ¶ 17.  Unlike the Eastern and Western Interconnections that serve the rest of the country, the Texas Interconnection

---

[5] This opposition cites to the complaint that was before the Bankruptcy Court when it issued the order sought to be appealed.  Since then, Brazos has filed a further amended complaint and the Bankruptcy Court has denied a motion to dismiss that complaint.  But for purposes of this opposition, Brazos's relevant allegations have not materially changed.

[6] The Intervening Co-Op Members include: Mid-South Electric Cooperative Association; Denton County Electric Cooperative, Inc., d/b/a CoServ Electric; United Electric Cooperative Services, Inc., d/b/a United Cooperative Services; Tri-County Electric Cooperative, Inc.; Bartlett Electric Cooperative, Inc.; Comanche County Electric Cooperative Association; Cooke County Electric Cooperative Association, Inc. d/b/a PenTex Energy; Hamilton County Electric Cooperative Association; Heart of Texas Electric Cooperative, Inc.; J-A-C Electric Cooperative, Inc.; Navasota Valley Electric Cooperative, Inc.; and Wise Electric Cooperative, Inc.  *See* Adv. Dkt. No. 136, at 3-4 & n.5.

has extremely limited import and export capacity. *Id.* ¶ 16. Accordingly, most of the energy distributed throughout Texas is generated here. *See id.*

ERCOT operates the Texas Interconnection through "Protocols" it has adopted that are incorporated through the terms of its contract with Brazos, the "Standard Form Market Participant Agreement" ("SFA") entered into with market participants like Brazos. *Id.* ¶¶ 19, 22-24. ERCOT's Protocols are a set of comprehensive rules that govern interactions between ERCOT and market participants, and the Protocols establish the market for power sales and other related services. *Id.* ¶¶ 20-21. The SFA not only incorporates the Protocols by reference but also controls how and when changes to those Protocols can be effective to establish the rights and obligations between the parties. *Id.* ¶¶ 19, 25. The ERCOT Protocols themselves limit the manner in which they can be changed. *Id.* ¶¶ 19, 25.

For decades, Brazos has operated with great success under ERCOT's purview. It managed its generation and transmission portfolio to provide great value to its member cooperatives, and until this past year maintained impressive A and A+ credit ratings. *Id.* ¶ 12.

The Defendant-Intervenors are a group of participants in the ERCOT market who generate, sell, and/or transmit electric power and ancillary services in the ERCOT market. Each of the Defendant-Intervenors filed a proof of claim in the bankruptcy case against Brazos. The Bankruptcy Court authorized the Defendant-Intervenors' intervention in the adversary proceeding on October 22, 2021. *See* Adv. Dkt. No. 140.

### 2.    Winter Storm Uri

Last February, Winter Storm Uri blanketed Texas with extremely cold temperatures and freezing rain as an arctic air mass dipped southward. Complaint, ¶¶ 26, 28. Those conditions led

the National Weather Service to issue a weather briefing for Texas warning of dangerous weather, and the Texas Governor declared a state of disaster on February 12, 2021. *Id.* ¶¶ 27, 30.

Late on Monday, February 8, 2021, ERCOT issued an emergency Operation Condition Notice informing market participants that increased power and transmission services might be necessary, and it issued an extreme-cold "Advisory" on February 10 and a "Watch" on February 11. *Id.* ¶¶ 26, 28-29. These three issuances represent three stages of communication that anticipate a possible emergency, but none actually established the existence of an emergency condition under ERCOT's controlling Protocols. *Id.* ¶¶ 26, 28-29 & nn.7, 9, 11.

On February 15, 2021, ERCOT finally declared an Energy Emergency Alert ("EEA"), which it rapidly elevated from Level 1 to Level 3. *Id.* ¶ 33. A Level 3 emergency is the highest EEA ERCOT can declare, and by issuing one, ERCOT "instruct[s] transmission companies to reduce demand on the electric system; typically in the form of controlled outages" or rolling blackouts—also known as "firm load shed"—under which customers' power is selectively turned off. *Id.* ¶¶ 33-34, 58 & n.21; Adv. Dkt. No. 42, at 8 & n.12. ERCOT's EEA Level 3 remained in effect through February 19, 2021, during which time hundreds of power plants operated at reduced capacity and roughly four million customers were without power—some for more than four consecutive days. *Id.* ¶¶ 35-36. At the worst moments, nearly 50% of the generation capacity within ERCOT's jurisdiction was unavailable. *Id.* ¶ 36.

After Winter Storm Uri abated, however, ERCOT invoiced Brazos for power totaling over ***$2.247 billion***, the vast majority of which was for the short duration of Winter Storm Uri. *Id.* ¶ 37. Those charges were based on ERCOT's extracontractual manipulation of the pricing algorithms to force the system wide offer cap of $9,000 per megawatt-hour ("MWh"), which ERCOT charged Brazos for nearly four days straight. *See id.* ¶¶ 51-56; *see also* Adv. Dkt. No. 173, ¶¶ 109, 115-

118 ("Amended Complaint").[7]  By comparison, the $2.223 billion  ERCOT charged Brazos for the approximate one-week duration of Winter Storm Uri was more than twice Brazos's total wholesale power *annual* revenue for power supply deliveries to its member cooperatives in recent years. Complaint,  ¶ 15.

**B.    Procedural History.**

**1.    Brazos's Bankruptcy, ERCOT's Claim, And Brazos's Adversary Complaint Contesting it.**

ERCOT's massive bill precipitated Brazos's filing of a voluntary petition for bankruptcy relief under Chapter 11.  *Id.* ¶ 39.  Brazos remains in possession of its assets during the bankruptcy proceedings.  *Id.*

On June 14, 2021, ERCOT filed a proof of claim (the "ERCOT Claim") against Brazos. *Id.* ¶ 43.  The ERCOT Claim alleges that Brazos is liable to ERCOT in the amount of $1,899,152,990.64, with $1,877,591,506.10 of that amount allegedly subject to administrative expense priority status. *Id.*  That is because, ERCOT alleged, "[p]rior to the Petition Date, Brazos was in default of its obligations under the Brazos SFA and the ERCOT Protocols." *Id.*  On August 18, 2021, Brazos filed a nine-count complaint, initiating the adversary proceeding.  *See generally*, Complaint.  Counts 1, 2, and 3 are based on the SFA and the Protocols, and raise only issues of contract interpretation.

In Count 1, Brazos asserts that it has no obligation to pay ERCOT any amounts beyond those as required under the SFA and Protocols as such amounts are unenforceable thereunder, and therefore the ERCOT Claim should be disallowed to the extent it exceeds those amounts.  *Id.* ¶¶

---

[7] In addition to raising the issues it now seeks leave to appeal, ERCOT also moved to dismiss parts of Brazos's adversary complaint on other grounds, and the bankruptcy court dismissed one of Brazos's counts with leave to replead. *See*, *e.g.*, *see* Adv. Dkt. 131, at 168:9-169:6 ("Transcript").  Brazos repleaded that count and the bankruptcy court then denied a subsequent motion to dismiss. *See* Adv. Dkt. No. 243.  Brazos cites the amended complaint in this response only for added background.

47-50. That is because the SFA and the ERCOT Protocols include detailed requirements for calculating energy charges under emergency conditions, and ERCOT's manipulation of those pricing algorithms in a manner inconsistent with the SFA and Protocols meant its charges were improper. *Id.* ¶¶ 51-63. By failing to abide by the SFA and Protocols, ERCOT's invoices, as set forth in the ERCOT Claim, substantially overstate the amount Brazos actually owes. *Id.* ¶¶ 64-73.

Indeed, the Texas Legislature has expressly confirmed, by statute, that the amounts owed to ERCOT by electric cooperatives like Brazos for Winter Storm Uri must be "***calculated solely according to the protocols of [ERCOT] in effect during the period of emergency***." Tex. Util. Code § 41.151(b)(1) (emphases added). ERCOT purported to base and justify its massive invoice to Brazos on its *ad hoc* modification of the Protocols' scarcity pricing signals to recognize firm load shed (*i.e.*, rolling blackouts)—pricing that ERCOT asserted it was required to adopt pursuant to orders issued to it by the PUCT (the "PUCT Orders"). Amended Complaint, ¶¶ 116-117. But at the time of Winter Storm Uri, the Protocols that governed Brazos's settlement prices with ERCOT expressly did ***not*** include firm load shed as a factor in the Protocols' specific pricing mechanism related to scarcity conditions. *Id.* ¶¶ 112-114, 128. To the contrary, ERCOT did not amend the Protocols to add firm load shed as a factor until June of this year, long after Winter Storm Uri. *Id.* ¶ 130. The amendment had no retroactive effect. Moreover, in 2014 ERCOT had expressly rejected load shed as a factor in proposed amendments to the Protocols. Complaint ¶ 59.

Count 2 alleges that ERCOT failed to mitigate its damages as required by the SFA by permitting energy prices to fall once load shed was no longer required during Winter Storm Uri. *Id.* ¶¶ 74-92. Brazos alleged that ERCOT continued charging $9,000 per MWh for the last 33 hours of Winter Storm Uri, after firm load shed ceased, leading to over $16 billion in unnecessary energy costs to the Texas market. *Id.* ¶¶ 81-83. And although the Protocols gave ERCOT the

authority to reduce energy prices even after Winter Storm Uri subsided, it refused to do so. *Id.* ¶¶ 86-89. Taking any of these actions, Brazos alleged, would have saved Brazos at least hundreds of millions in charges. *Id.* ¶¶ 90-92.

Count 3 challenged ERCOT's allegation that Brazos was in default under the SFA at the time it petitioned for bankruptcy. Again, Brazos relied on and complied with the terms of the SFA, which required a notice of default that ERCOT never sent and which excepts parties from default as a result of a "Force Majeure Event," and the Protocols which define a "Force Majeure Event." *Id.* ¶¶ 93-100. ERCOT sought dismissal of Counts 1 and 3 on the merits, arguing that Brazos had failed to state a claim. Adv. Dkt. No. 23, 17-20.

Counts 4 and 5 raise only issues of bankruptcy and insolvency law, and assert that ERCOT's charges rendered Brazos insolvent and left it with unreasonably small capital to carry on its business. Complaint, ¶¶ 140-41, 144-45. Therefore, to the extent ERCOT's charges exceeded the reasonably equivalent value of electricity sold to Brazos, the ERCOT Claim is void as a constructively fraudulent obligation under the Bankruptcy Code and Texas law. *Id.* ¶¶ 141, 147. ERCOT did not seek dismissal of Counts 4 and 5 on the merits and gave no legally competent reason why fraudulent obligation issues under the Bankruptcy Code, which are within the competence of the Bankruptcy Court, should be subject to abstention pending state court litigation which does not and cannot address these issues. *See* Transcript, 54:25-56:10.

Finally, Counts 6, 7, 8 and 9 seek a determination, on various grounds, that the ERCOT Claim is not a priority claim under the Bankruptcy Code. Complaint, ¶¶ 148-63. ERCOT did not move for abstention or dismissal of Counts 6 or 7, *see* Adv. Dkt. 23, 20, 25 (addressing Brazos's pricing counts only), so these Counts will remain pending in the Bankruptcy Court. It should also be noted that litigation of Count 9 will resolve determinative issues with respect to Counts 4 and

5.  Count 9 asserts that under Bankruptcy Code § 503(b)(9), ERCOT cannot have a priority claim in excess of the value of electricity sold to Brazos.  Complaint, ¶¶ 161-63.  Therefore, Count 9 requires the Bankruptcy Court to determine the value of electricity ERCOT sold to Brazos, and such value could be determinative for the fraudulent obligations asserted in Counts 4 and 5 even if this Court accepted this appeal and ordered abstention.

In sum, Brazos's adversary complaint challenged the ERCOT Claim in bankruptcy primarily because the nearly $2.0 billion in charges were improper and unenforceable against Brazos under the terms of the SFA, the Protocols, and applicable law.  *Id.* ¶¶ 122-38.  ERCOT simply lacked the requisite contractual authority to charge Brazos for the energy prices that it manually set at $9,000 MWh and still be in compliance with the SFA and Protocols, or independent principles of bankruptcy law. Accordingly, Brazos alleged, the ERCOT Claim must be disallowed, substantially reduced, and reclassified by the Bankruptcy Court.

### 2.  ERCOT Seeks Abstention And Dismissal Of Some Counts For Failure To Join An Indispensable Party, Which The Bankruptcy Court Denies.

ERCOT responded by moving, *inter alia*, for dismissal of several of Brazos's counts, *see supra* note 7, and for the Bankruptcy Court to abstain from further proceedings regarding the ERCOT Claim.  Adv. Dkt. No. 23.  Congress has given bankruptcy courts the discretionary authority to "abstain[ ] from hearing a particular proceeding arising under title 11 or arising in or related to a case under title 11," 11 U.S.C. § 1334(c)(1), and ERCOT asked the Bankruptcy Court to exercise that authority under the multi-factor abstention doctrine set forth *Burford v. Sun Oil Co.*, 319 U.S. 315 (1943).  *See* Adv. Dkt. No. 23, ¶¶ 28-33.  ERCOT also sought dismissal of five of Brazos's adversary counts on the ground that the PUCT was purportedly an indispensable party even though **ERCOT** initiated this dispute by filing its claim against Brazos—to which Brazos's

adversary complaint merely responded—without the PUCT's participation. *Id.* ¶ 61; Adv. Dkt. No. 42, ¶ 104; *see also* Transcript 155:16-23.

ERCOT argued that Brazos's attempt to challenge the ERCOT claim based on exorbitant prices was improper because it "implicate[d] the PUCT and its role in regulating Texas electric utilities." Adv. Dkt. No. 23, ¶ 61. ERCOT argued that the PUCT's actions or presence was somehow relevant to the bankruptcy proceeding because, in invoicing Brazos in a manner that violated the Protocols and its contract with ERCOT, ERCOT had been following the PUCT Orders. *Id.* ¶¶ 12-14. ERCOT argued, in effect, that its role during Winter Storm Uri was simply to carry out the PUCT Orders, such that the Bankruptcy Court could not adjudicate Brazos's challenge to the ERCOT Claim without addressing the validity of the PUCT Orders in the process. *Id.* ¶¶ 63-64. And because the PUCT's sovereign immunity allegedly barred adding it as a party to Brazos's challenge to the ERCOT Claim—which ERCOT had asserted in the Bankruptcy Court without making the PUCT a party—ERCOT argued that all of the various factors supporting dismissal under Federal Rules of Civil Procedure 12(b)(7) and 19 were met. *See id.* ¶ 65.

Regarding abstention, ERCOT argued similarly that the Bankruptcy Court should abstain from addressing Brazos's challenge to the ERCOT Claim because the underlying validity of the PUCT Orders is a matter of Texas law that should be decided in a Texas forum. *Id.* ¶¶ 48-51. ERCOT contended that assessing the PUCT's authority and its orders would require deciding questions relating to Texas's regulatory scheme. *Id.* ¶¶ 53-55. ERCOT asserted that *Burford* abstention under the five-factor test outlined in *Wilson v. Valley Electric Membership Corp.*, 8 F.3d 311, 314 (5th Cir. 1993), was appropriate. *See* Adv. Dkt. No. 23, ¶¶ 52-60.

After holding a six-hour hearing at which ERCOT's motion was extensively argued, the Bankruptcy Court denied ERCOT's motion with respect to the PUCT's indispensability and

abstention.   Transcript 166:2-168:5;   Adv. Dkt. No. 137.   The Bankruptcy Court found that the PUCT was not indispensable  because the bankruptcy proceeding would not decide the validity of the PUCT Orders.  *See* Transcript 167:16-168:5.   That was because Brazos did not challenge the validity  of the PUCT Orders;  rather, its challenge to the amount of the ERCOT Claim  would survive even on the assumption  that the PUCT Orders were valid.   *See id*. at 70:10-73:22 (Bankruptcy Court asking Brazos to explain how its counts would proceed even on the assumption that the PUCT Orders were valid); *id*. at 167:16-168:5 (finding  the PUCT not indispensable).   As Brazos had explained,  Brazos had no obligation  to pay ERCOT any amount  in excess of the charges provided  under the SFA and the Protocols, ***regardless*** of whether the PUCT had validly issued its orders to ERCOT.  *Id*. at 72:17-73:14.   That dispute  will not require the Bankruptcy Court to opine on the validity  of the PUCT Orders, which left no reason for the Bankruptcy Court to find the PUCT indispensable.   *See id*. at 167:16-168:5.   Indeed, although the PUCT made a special appearance in the case, it never expressly argued that its presence was indispensable.  *See* Adv. Dkt. No. 69.  Further, the Bankruptcy Court noted that Brazos was simply  challenging  a bankruptcy claim that ERCOT itself voluntarily  filed.  Transcript, 65:14-67:22.  Had ERCOT not filed the ERCOT Claim, it may not have been subject to the Bankruptcy Court's jurisdiction  and could have avoided any purported "affront" to the PUCT's sovereign immunity.   *Id*. at 67:14-22.

        The Bankruptcy Court also found that abstention was improper for similar  reasons. Although  other parties—not  including  Brazos—had  initiated  litigation  in Texas state courts challenging  the validity  of the PUCT Orders, the Bankruptcy Court explained  that even if it abstained while those state court actions proceeded, it still would need to decide the pure bankruptcy issues that the ERCOT Claim indisputably  raised even after those state court cases were decided.  *Id*. at 166:19-167:10.   Because the Bankruptcy Court was the only forum  to

adjudicate ERCOT's voluntarily-filed claim, abstention only would substantially slow the bankruptcy proceedings without deciding any issue that would control them. *Id.* at 75:7-18, 167:2-10. The ongoing state proceedings—which do not involve Brazos or ERCOT—could, at most, address the validity of the PUCT Orders, which would not settle the central issue raised by Brazos's adversary complaint objecting to the ERCOT Claim for improperly invoicing Brazos *regardless* of whether the PUCT Orders were valid. *Id.* at 74:23-75:18. The court therefore declined to abstain from hearing the adversary proceeding either under the *Burford* factors or the more general grounds governing permissive abstention in bankruptcy cases under 28 U.S.C. § 1334(c)(1). *Id.* at 166:10-167:14.

The Bankruptcy Court orally denied ERCOT's motion in relevant part on October 18, 2021, while also allowing the Plaintiff-Intervenors and the Defendant-Intervenors to intervene in the case. It entered a short order with the same effect on October 22, 2021. Adv. Dkt. No. 137. On November 5, 2021, ERCOT and the aligned Intervenors noticed an appeal to this Court and filed the motion currently at issue. Adv. Dkt. Nos. 208, 209.[8]

## III.   QUESTIONS PRESENTED

1.     Whether the Court should grant ERCOT leave to appeal the Bankruptcy Court's interlocutory order finding the PUCT unnecessary to adjudicate Brazos's challenge to the proof of claim that ERCOT itself voluntarily filed in the Bankruptcy Court, when would-be appellant ERCOT has not challenged the legal standard applied by the Bankruptcy Court and when reversal would not end the bankruptcy proceeding in any event.

---

[8] After the bankruptcy court issued the order sought to be reviewed, ERCOT filed an amended bankruptcy claim. *See* Claim 115, No. 21-30725 (Bankr. S.D. Tex. filed Nov. 4, 2021). That amended claim is not properly before this Court because it was not the subject of the bankruptcy court's rulings that ERCOT has sought leave to appeal. *See, e.g., United States v. Cook*, 454 F.3d 938, 940 (8th Cir. 2006) (the record for an interlocutory appeal "consists of the fact materials and the legal arguments before the [lower] court when it ruled").

2.      Whether the Court should grant ERCOT leave to appeal the Bankruptcy Court's interlocutory order declining to abstain from deciding Brazos's challenges to the ERCOT Claim—a core proceeding resulting from ERCOT's voluntary filing of a proof of claim in Brazos's chapter 11 case—when would-be appellant ERCOT does not challenge the legal standard the Bankruptcy Court applied and when the adversary proceeding would eventually continue even if abstention were granted.

## IV.    LEGAL STANDARD

As noted above, courts in the Fifth Circuit apply the standards articulated in 28 U.S.C. § 1292(b) to determine whether to grant leave to appeal an interlocutory order of a bankruptcy court under 28 U.S.C. § 158(a)(3). *See supra* at 2. But "such interlocutory appeals should only be granted in 'exceptional' circumstances,"[9] and "are 'generally disfavored.'"[10] Moreover, the conditions in § 1292(b) "'are to be strictly construed and applied.'"[11]

## V.    ARGUMENTS AND AUTHORITIES

### A.    The Movants Raise No Controlling Questions Of Law.

#### 1.    The Questions Sought To Be Appealed Are Not Pure Questions Of Law Within The Purview Of Section 1292(b).

The Movants' request for leave to appeal must fail at the outset because nowhere do they demonstrate that either of the questions they present—whether the Bankruptcy Court should have abstained from hearing Brazos's complaint challenging the claim ERCOT itself filed in Brazos's bankruptcy proceeding, and whether that same complaint should be dismissed because the PUCT cannot be joined—is a question *of law* within the meaning of Section 1292(b). That

---

[9] *Abecassis*, 2014 WL 5483724, at *2 (quotation omitted).

[10] *Ysleta del Sur Pueblo*, 370 F. Supp. 3d at 708 (quotation omitted).

[11] *Id.* (quotation omitted).

presentation is an essential condition to granting leave to file an interlocutory appeal. Section 1292(b) requires a "***pure*** question of law," which is something the appellate court can "decide quickly and cleanly without having to study the record." *Ahrenholz v. Bd. of Tr.*, 219 F.3d 674, 676-77 (7th Cir. 2000). Such questions may involve "the meaning of a statutory or constitutional provision, regulation, or common law doctrine." *Id.* at 676.

But issues left to a lower court's discretion do not suffice. For example, in *J.C. Trahan Drilling Contr., Inc., v. Sterling*, 335 F.2d 65, 66-67 (5th Cir. 1964), the Fifth Circuit dismissed a Section 1292(b) appeal as improvidently granted when "the order appealed from did not involve a controlling question of law within the meaning of Section 1292(b) but merely an exercise of a sound judicial discretion." Indeed, even some questions that are "technically" questions of law, such as ones regarding the "meaning of a contract," are not legal questions encompassed by Section 1292(b) because answering them may "require immersion in what may be a long, detailed, and obscure" document. *Ahrenholz*, 219 F.3d at 676-77; *see also Malbrough v. Crown Equip. Corp.*, 392 F.3d 135, 136-37 (5th Cir. 2004) (holding that court could address question assigning legal standard for liability but not whether evidence raised triable issue thereunder).

Accordingly, courts in this district, including this Court, have repeatedly denied requests for leave to appeal interlocutory orders where, as here, the questions presented involved only the application of settled law to particular facts. *See, e.g., Sacks v. Tex. S. Univ.*, No. H-18-3563, 2021 WL 4149136, at *1 (S.D. Tex. Apr. 29, 2021) ("Plaintiff has specified no controlling question of law [but] merely describes her own substantial disagreement with the Court's application of well-established law to the evidence in the summary judgment record.").[12] That is unsurprising because

---

[12] *See also, e.g., Enviro-Lite Sols., LLC v. Edinburg Consol. Indep. Sch. Dist.*, No. 7:20-CV-360, 2021 WL 3832818, at *6 (S.D. Tex. Feb. 24, 2021) (declining to certify bankruptcy order for interlocutory appeal when reviewing it would require "the application of law to fact"); *PPD Enterprises, LLC v. Stryker Corp.*, No. H–16–0507, 2017 WL 3263469, at *1 (S.D. Tex. June 27, 2017) (finding no question of law when defendants "merely disagree[d] with this court's

it is well-settled that "fact-review question are inappropriate for § 1292(b) review." *Clark-Dietz*, 702 F.2d at 69 (refusing review despite 1292(b) request when issues raised were "fact-review questions inappropriate for § 1292(b) review."); *see MCorp*, 139 B.R. at 823 (denying leave under Section 158(a)(3) because "[m]any, if not most, of the grounds for appeal, are matters committed to the sound discretion of the Bankruptcy Court; there is neither a controlling issue of law or substantial ground for a difference of opinion on the relevant legal principles. The issues rest within the sound discretion of the bankruptcy judge after a fact-intensive review.") (quotation omitted).

Under these standards, the Movants cannot demonstrate that either of the questions they raise are purely **legal**. *Cf.* Motion 9. Because they are not: dismissing a case for lack of an indispensable party and abstaining under *Burford* or Section 1334 (c)(1) involve weighing multiple factors based on the particular circumstances a case presents. Assessing indispensability under Federal Rule of Civil Procedure 12(b)(7) "'requires a two-step inquiry' that 'is a highly-practical, fact-based endeavor.'" *Rajet Aeroservicios S.A. de C.V. v. Castillo Cervantes*, 801 F. App'x 239, 246 (5th Cir. 2020) (quoting *Hood ex rel. Miss. v. City of Memphis*, 570 F.3d 625, 628 (5th Cir. 2009)). Further, deciding whether to dismiss a case even when a necessary party cannot be joined rests on a court's assessment of "equity and good conscience." Fed. R. Civ. P. 19(b). In a similar vein, *Burford* abstention—a "rare" exception to federal courts' "virtually unflagging obligation" to hear cases within their jurisdiction—is assessed by weighing five factors, some combination of which may, or may not, support abstention depending on the particular circumstances of a case. *See, e.g., Grace Ranch, L.L.C. v. BP Am. Prod. Co.*, 989 F.3d 301, 318-19 (5th Cir. 2021) (three factors did not warrant abstention). And abstention under 28 U.S.C. § 1334(c)(1) is governed by

application of [well-settled] rules" to the facts of the case); *Smith v. AET Inc., Ltd.*, Nos. C-07-123, C-07-124, C-07-126, 2007 WL 1644060 (S.D. Tex. June 4, 2007) (interlocutory appeal of "heavily fact-based" orders would "necessarily involve a review of the factual record," such that interlocutory review was "not appropriate" under § 1292(b)).

an eleven-factor balancing test that is "left to the discretion of the district court." *In re Republic Reader's Serv., Inc.*, 81 B.R. 422, 427, 429 (Bankr. S.D. Tex. 1987).

Here, the issues the Movants seek to appeal are simply disagreements with the Bankruptcy Court's application of these many factors to the unique circumstances of this case. At the end of the six-hour hearing, the Bankruptcy Court found that the PUCT is not indispensable. Transcript 167:16-168:5. The court asked the PUCT to explain how Brazos's adversary complaint could result in "an affront to state sovereignty" when it was ERCOT that voluntarily filed a bankruptcy claim in the first place without joining the PUCT. *Id.* at 67:14-68:4 (ERCOT's counsel answering only that Brazos's case challenges the PUCT Orders). Tellingly, the PUCT, which never moved to intervene in the proceeding, had no answer. *Id.* Accordingly, the Bankruptcy Court found that Brazos's complaint is a "simple claim objection" that would not affect the PUCT's interests and involves no "affirmative relief … against [the PUCT]." *Id.* at 166:24-167:2. The Movants identify no legal principle that the Bankruptcy Court order offends, and their request for immediate review is therefore just a futile request that this Court reach a different result through a different weighing of well-settled factors. That is not enough for leave to appeal under Section 1292(b). *See Clark-Dietz*, 702 F.2d at 68-69; *Sacks*, 2021 WL 4149136, at *1; *MCorp*, 139 B.R. at 823. Indeed, the SFA and Protocols underlying these issues are lengthy, detailed, and technical documents that likewise undercut any argument for interlocutory review. *Malbrough*, 392 F.3d at 136-37.

For similar reasons, the Movants have not shown that the denial of abstention is a pure legal question under Section 1292(b). The Bankruptcy Court "f[ound]" that the various requirements for *Burford* and Section 1334 abstention "ha[d] not been satisfied." Transcript 167:11-14. That conclusion clearly was appropriate under the circumstances of this case. The Bankruptcy Court had already explained that it could decide the issues raised by Brazos's

challenge to the ERCOT Claim while assuming the PUCT Orders' validity, which Brazos had not challenged. *See id.* at 71:2-73:22; *id.* at 167:18-168:3. The court therefore could—and did— avoid delving into any difficult state-law questions relating to the PUCT's authority, or disrupting any state proceedings on those issues. Whatever the outcome of pending state cases challenging the validity of the PUCT Orders, none of which involve Brazos or ERCOT, the Bankruptcy Court still must decide whether Brazos is liable for ERCOT's invoices in excess of amounts due under the SFA and the Protocols, as well as the other bankruptcy-related counts that Brazos raised in its adversary complaint. Accordingly, neither *Burford's* nor Section 1334(c)(1)'s core principles were implicated at all. *See, e.g., New Orleans Pub. Serv., Inc. v. Council of New Orleans*, 491 U.S. 350, 361-62 (1989). And the Movants have made no attempt to argue that reweighing all of the various elements of *Burford* or Section 1334 abstention is the kind of pure question of law that is proper for immediate appeal. *See Ahrenholz*, 219 F.3d at 676-77.

## 2. The Questions the Movants Seek To Appeal Are Not "Controlling" Within The Meaning Of Section 1292(b).

Even if the questions the Movants identify were pure questions of law—and they are not— they are not "controlling" in the relevant sense. A question may be controlling if reversal would result in the "dismissal" of the case or "materially advance the ultimate termination of the litigation," or else would have "precedential value for a large number of cases." *Ryan v. Flowerserve Corp.*, 444 F. Supp. 2d 718, 723 (N.D. Tex.2006); *see also, e.g., Clark-Dietz*, 702 F.2d 68-69 (finding no "controlling" questions when questions had no significance beyond case and when time savings from reversal would have been modest).

The questions Movants raise do not suffice. The Movants argue only that a reversal in ERCOT's favor would "resolve ***most*** of Brazos's adversary complaint" and "significantly ***narrow*** the issues to be tried in this case." Motion 9 (emphasis added). Thus, the Movants do not even

claim, much less demonstrate, that the issues they raise could be dispositive on any substantive issue in this case. That is because a reversal on either indispensability or abstention would accomplish nothing more than delaying the resolution of questions that the Bankruptcy Court must ultimately resolve and which are critical to Brazos's bankruptcy case. Even if the other pending state cases involving the PUCT could affect the issues now before the Bankruptcy Court—and they could not—Movants nowhere explain how a ruling in their favor on the questions presented, which would merely delay these proceedings pending the uncertain resolution of other cases involving other parties, would necessarily result in a judgment in ERCOT's favor on its nearly $2 billion affirmative claim against Brazos. Nor do the Movants assert that any question they identify would have precedential value in other cases. Indeed, again they could not possibly make such a showing since the Movants seek only to have this Court review the Bankruptcy Court's discretionary application of settled law to the specific circumstances of this unique case.

Further, the Movants do not claim that the questions they raise are dispositive. Motion 9. Nor could they, because even ERCOT admits that at least some aspects of this case must eventually be decided by the Bankruptcy Court regardless of abstention or the PUCT's purported indispensability. *See* Transcript 23:23-27:1, 167:2-14 (finding that ERCOT had been "unable" to "explain … how [this case] would ultimately get resolved" if abstention were granted, such that the underlying bankruptcy issues would simply "end[ ] up back in front of [the Bankruptcy Court]" eventually). Indeed, this entire adversary proceeding involves a claim that ***ERCOT*** itself filed; accordingly, even if the Bankruptcy Court were to abstain for some indeterminate amount of time in favor of state court cases to which Brazos and ERCOT are not parties, the court would still need to determine the amount and priority of the ERCOT Claim under bankruptcy law. And in the unlikely event a state court were to timely issue a ruling that had any impact on these proceedings,

the Bankruptcy Court could take account of that ruling in its decisions. Neither abstention nor the joinder of the PUCT would be necessary for that to occur. Brazos's adversary proceeding will therefore continue regardless of whether this Court were to entirely reverse the Bankruptcy Court's findings on the indispensable party and abstention issues, such that the Movants are asking for nothing but premature review of interlocutory decisions that the Movants disagree with. That does not suffice under Section 1292(b).

Because the Movants raise no controlling questions of law within the meaning of Section 1292(b), this Court need not consider the remaining elements to deny leave. *Smith*, 2007 WL 1644060, at *6 n.13 (declining even to consider remaining elements when "there [wa]s no 'controlling issue of law' involved in either appealed Bankruptcy Court order" because "the absence of the involvement of a controlling issue of law precludes interlocutory review of the appealed Bankruptcy Court orders, regardless of whether the second two criteria of Section 1292(b) are satisfied."). Therefore, the Motion should be denied on this basis alone.

**B.     The Movants Identify No Relevant Grounds For A Substantial Difference Of Opinion.**

Even if the Court considers the remaining elements, the Motion is fatally defective. Questions raise "substantial grounds for a difference of opinion" when they are controlled by conflicting authority. The substantial-grounds element usually requires a movant to "demonstrate that at least two courts interpret the relevant legal principle differently," or at least to demonstrate "that any court has interpreted the relevant legal principle differently under substantially similar circumstances." *In re Red River Energy, Inc.*, 415 B.R. 280, 285 (S.D. Tex. 2009). But it is "simply not enough for interlocutory review that the order for which appeal is sought presents a difficult ruling; nor is it sufficient that the movant can demonstrate a lack of authority on the issue." *Id.* (quoting *In re Pac. Forest Prods. Corp.*, 335 B.R. 910, 922 (S.D. Fla. 2005)).

Here, the Motion identifies no conflicting law on either question it raises. Regarding indispensability, the Movants argue that the PUCT could be considered indispensable based on ERCOT's reading of several SFA provisions, the Protocols, and a handful of Texas statutory provisions. Motion 12-13 & nn.39, 43 (arguing that adjudicating Brazos's adversary complaint contesting the ERCOT Claim would diminish the PUCT's authority). But the Movants identify no decisions from any court addressing these issues, let alone any decision that purportedly conflicts with the decision below under similar circumstances. *Cf. id.* Rather, they simply reargue the merits of the indispensability decision they seek to appeal. That does not satisfy the standards under Section 1292(b). *Red River Energy*, 415 B.R. at 285. And to the extent the Movants only ask this Court to reapply the well-understood indispensability factors in the hope of getting a different result from that reached by the Bankruptcy Court, that approach merely highlights that the Movants' questions are not pure questions of law that would warrant interlocutory review.

The Movants' argument regarding abstention is equally deficient. The Movants concede that the question is "one of first impression" and identify only one case—*Burford* itself—that the Movants argue involved similar circumstances. Motion 9-11. But *Burford* is inapposite. There, the plaintiff sued a private defendant "to enjoin the enforcement" of a state commission's order granting that defendant a permit to drill oil wells. 319 U.S. at 316-17. That meant the plaintiff was expressly "attack[ing] the *validity*" of the permit through a suit against the party that had been granted the permit. *Id.* (emphasis added). But here, as Brazos explained below, its adversary complaint can be fully litigated on the assumption that the PUCT Orders were valid. That is because the central issue between Brazos and ERCOT is the amount and administrative priority status of the ERCOT Claim, including whether ERCOT "failed to follow [its] protocols" that set limits on how ERCOT could set energy prices. Transcript 69:21-71:25 (Brazos explaining that

Bankruptcy Court can assume validity of the PUCT Orders to address adversary complaint); *Id.* at 88:10-17 (Bankruptcy Court noting that it "has [no] authority over [the PUCT's] Orders" and therefore cannot say that the "PUCT got it wrong" or "assume that [the PUCT's] Orders were wrong"). Accordingly, abstention here would have no benefit to ERCOT or effect on the PUCT. Whatever the result of the separate Texas proceedings, the Bankruptcy Court still must determine the value and priority of the ERCOT Claim in any event. *See id.* at 74:18-75:18. Litigating the ERCOT Claim under an assumption that the PUCT Orders are valid therefore removes any potential for the case to serve as an indirect attack on those orders. That circumstance renders *Burford* inapposite.

In fact, *Burford* is inapposite for a still more fundamental reason: ERCOT voluntarily submitted its claim to, and itself to the jurisdiction of, the Bankruptcy Court, and, as the Bankruptcy Court repeatedly noted, Brazos's complaint merely objects to the ERCOT Claim. *See, e.g.,* Transcript 65:14-18 (Bankruptcy Court responding to argument that Texas law provides sole forum for Brazos's complaint by noting that "ERCOT … could never be subject to [its] jurisdiction" unless it filed a claim in Brazos's bankruptcy). Thus, this case is fundamentally unlike *Burford*, since in that case neither the defendant nor the state agency had voluntarily subjected itself to the federal court's jurisdiction. Accordingly, *Burford* does not address abstention in circumstances that are anything like the ones presented here, and the Movants identify no other case that does. Nor do the Movants argue that the Bankruptcy Court abused its discretion in declining to abstain under the more general factors that apply to permissive abstention in bankruptcy cases under 28 U.S.C. § 1334(c)(1). The Movants have thus failed to demonstrate any sufficient grounds for a difference of opinion regarding either indispensability or abstention and the Motion can be denied for that reason alone.

**C.    Dismissal Or Abstention Would Materially Delay, Not Advance, This Litigation.**

Finally, reversing the Bankruptcy Court on either of the issues the Movants raise would do nothing to "materially advance the ultimate termination of the litigation." 28 U.S.C. § 1292(b). As explained above, *supra* at 18-20, reversal of the Bankruptcy Court's indispensability holding would at most result in dismissing five of the nine Counts in the Complaint, leaving the rest for further proceedings. Transcript 86:23-87:1 (ERCOT agreeing that its abstention and indispensability arguments would not cover all adversarial counts). And reversal of abstention merely would stall Brazos's bankruptcy proceeding, potentially for years, to the extreme prejudice of Brazos and other creditors and parties in interest, only to have the case return to the Bankruptcy Court to decide all of the core bankruptcy issues that cannot be adjudicated elsewhere. Transcript 24:15-27:1, 154:1-3, 166:19-167:14. Meanwhile, the claims of all other bankruptcy claimants, and the fate of Brazos, its members and its members' customers, would be held in limbo given the relative enormity of the ERCOT Claim. Far from "materially advancing" this litigation's ultimate termination, allowing ERCOT's immediate appeal would unnecessarily delay it to the detriment of Brazos and more than a million Texans who depend on it and its members for their electricity.

Moreover, whether an interlocutory appeal would materially advance a case is "closely tied" to whether a party has raised a controlling question of law in the first place, as the Movants themselves recognize. *See* Motion 13-14. That is because the resolution of a controlling question of law may eliminate the need for proceedings to determine issues that would be rendered irrelevant by an appellate court's early determination of that governing law. *See Ahrenholz*, 219 F.3d at 677 (interlocutory appeal proper to decide "abstract legal issue" when doing so can "head off protracted, costly litigation"). But where, as here, the questions raised would simply require the reviewing court to reconsider facts using the same standard the lower court applied, an interlocutory appeal will *itself* multiply proceedings. *See, e.g., Clark-Dietz*, 702 F.2d at 69 (appeal

itself would add "four to six months" to resolution of litigation).   Resolution of the questions the Movants present will only stall the proceedings below—possibly for years—while unrelated cases are litigated in other fora; but however those cases are resolved, ERCOT will need to return to the Bankruptcy Court to resolve the many questions of bankruptcy law that are indisputably within the Bankruptcy Court's *in rem* jurisdiction and purview, including, among many other issues, the amount and nature of the ERCOT Claim, the fraudulent conveyance defense and various questions concerning administrative priority under the Bankruptcy Code.   In these circumstances, reversal on appeal would not materially advance the termination of this litigation but would have the exact opposite effect.   Immediate appeal is therefore wholly unwarranted.

## VI.   PRAYER

For the foregoing reasons, Brazos respectfully requests that this Court deny the motion and grant Brazos such other and further relief as may be just and proper.

*[Remainder of Page Intentionally Left Blank]*

Dated: November 19, 2021
        Houston, Texas

Respectfully submitted,

By: */s/ Jason L. Boland* _____
Jason L. Boland
TX Bar No. 24040542 (S.D. Bar No. 37238)
Attorney-in-Charge
**NORTON ROSE FULBRIGHT US LLP**
1301 McKinney Street, Suite 5100
Houston, TX 77010
Telephone:    (713) 651-5151
Facsimile:    (713) 651-5246
Email: jason.boland@nortonrosefulbright.com

*Counsel to the Debtor and Debtor in Possession*

Of Counsel:

Lino Mendiola
TX Bar No. 00791248 (S.D. Bar No. 21054)
Michael Boldt
TX Bar No. 24064918 (*pro hac vice* requested)
Jim Silliman
TX Bar No. 24081416 (S.D. Bar No. 2365032)
**EVERSHEDS SUTHERLAND (US) LLP**
One American Center
600 Congress Ave., Suite 2000
Austin, TX 78701
Telephone: (512) 721-2700
Facsimile: (512) 721-2656
Email: linomendiola@eversheds-sutherland.us
Email: michaelboldt@eversheds-sutherland.us
Email: jimsilliman@eversheds-sutherland.us

Louis R. Strubeck, Jr.
TX Bar No. 19425600 (S.D. Bar No. 15416)
Nick Hendrix
TX Bar No. 24087708 (S.D. Bar No. 2524989)
**O'MELVENY & MYERS LLP**
2501 North Harwood Street
Dallas, Texas 75201
lstrubeck@omm.com
nhendrix@omm.com
(972) 360-1925

Julie Harrison
TX Bar No. 24092434 (S.D. Bar No. 3017799)
Maria Mokrzycka
TX Bar No. 24119994 (S.D. Bar No. 3610759)
**NORTON ROSE FULBRIGHT US LLP**
1301 McKinney Street, Suite 5100
Houston, TX 77010
Telephone:    (713) 651-5151
Facsimile:    (713) 651-5246
Email: julie.harrison@nortonrosefulbright.com
Email: maria.mokrzycka@nortonrosefulbright.com

Paul Trahan
TX Bar No. 24003075 (S.D. Bar No. 563869)
98 San Jacinto Boulevard, Suite 1100
Austin, TX 78701
Telephone:    (512) 536 5288
Facsimile:    (512) 536 4598
Email: paul.trahan@nortonrosefulbright.com

## CERTIFICATE OF SERVICE

I certify that on November 19, 2021, I filed the foregoing document through the Court's CM/ECF system, which served it on all counsel of record in this matter.

/s/ Jason L. Boland
Jason L. Boland

*Counsel for Appellee Brazos Electric Power Cooperative, Inc.*